UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CAROLENG INVESTMENTS LIMITED,

                    Petitioner,

v.

BLUESTONE RESOURCES, INC.,

                    Respondent.

Case No. 7:23-cv-10010

**THIRD PARTY 1ST SOURCE BANK'S REPLY TO
PETITIONER'S RESPONSE TO 1ST SOURCE BANK'S JOINDER TO
THE MOTION FOR STAY OF SUPPLEMENTAL WRIT OF EXECUTION**

1st Source Bank ("1st Source"), by counsel, replies to Petitioner Caroleng Investments Limited's ("Petitioner" or "Caroleng") Response to 1st Source's Joinder to Respondent Bluestone Resources, Inc.'s ("Respondent" or "Bluestone") Motion for Stay of Supplemental Writ of Execution (ECF No. 20) ("Response") as follows:

*Background*

1. On March 29, 2018, 1st Source and Bluestone Resources, Inc. ("Bluestone") entered into a Loan and Security Agreement (the "Loan Agreement") governing the terms of a loan from 1st Source to Bluestone in the original principal amount of $1,550,000.00 (the "Loan"). A true copy of the Loan Agreement is attached hereto as **Exhibit A**.

2. To secure the repayment of the Loan, Bluestone granted 1st Source a lien in certain collateral as provided in the Loan Agreement:

> "Collateral" means the aggregate of (a) the property described in any addendum, schedule or other separate document that, by its terms, is made a part of this Agreement; plus (b) any other assets of

> Customer in which Customer has granted Bank a security interest under any other existing or future agreement, whether or not related to this Agreement. If the property included in the Collateral is equipment (whether or not held as inventory) ("Equipment"), then Collateral also includes (i) all logs, records and manuals relating to the Equipment, (ii) all present and future attachments, accessories, parts, repairs, additions, accessions, substitutions, exchanges and replacements identified with or relating to the Equipment; (iii) all present and future rights of Customer relating to the physical condition of the Equipment, including under any warranties, service or maintenance agreements, storage agreements or insurance policies; (iv) all present or future rights of Customer in connection with the use and/or operation of the Equipment by any third party under any lease, rental agreement or license; and (v) proceeds of the Equipment and any of (i) through (iv).

Included in the definition of "Collateral" (herein, the "Collateral") is that certain 2012 Bell Helicopter Textron Canada, Model No. 427, Serial No. 56079, FAA Registration No. N30GM, plus two Pratt & Whitney Canada Model No. PW207D engines, bearing Model Nos. PCE-BF0190 and PCE-BF0191 (collectively, the "Helicopter"), which became part of the Collateral when Bluestone executed and delivered to 1st Source a Loan and Security Agreement dated December 16, 2020 granting a lien in the Helicopter (the "Aircraft Security Agreement"). A true copy of the Aircraft Security Agreement is attached hereto as **Exhibit B**.

3. On February 20, 2021, 1st Source perfected its security interest in the Helicopter by registering the lien in the Federal Aviation Administration Civil Aircraft Registry and recording electronically the Aircraft Security Agreement with the International Registry, subject to the International Registry of Mobile Assets. The Aircraft Title Search is attached as Exhibit 2 to the Mazur Affidavit. (*See* ECF No. 15-2.)

4. On October 9, 2018, Bluestone executed and delivered to 1st Source a Cross-Collateral Agreement (the "Cross Collateral Agreement") providing that all of the Collateral secures the Loan and all Additional Advances (as defined below). In addition, the Cross-Collateral

2

Agreement provides that "[a]ll Collateral will secure all Indebtedness until fully satisfied" and "[t]he terms hereof extend to future Collateral securing any Indebtedness under Agreements between Customer and Bank whether now or in the future existing." A true copy of the Cross Collateral Agreement is attached hereto as **Exhibit C**.

5. Pursuant to the Loan Agreement, between March 29, 2018, and May 2, 2019, 1st Source made several additional loans and/or advances to Bluestone to finance the acquisition of certain equipment (the "Additional Advances"). Each of the Additional Advances was evidenced by a note and security agreement granting 1st Source a lien in the purchased equipment.

6. On March 30, 2020, 1st Source and Bluestone entered into a Loan Modification Agreement, effective June 30, 2020 (the "Loan Modification"). The Loan Modification provided Bluestone with an extension of time to repay the Loan and the Additional Advances in exchange for security interests in additional collateral, which consists primarily of real estate owned by third-parties (the "Additional Collateral").

7. 1st Source and Bluestone entered into a Loan Obligation Restructure Agreement (the "Restructuring Agreement"), effective July 1, 2021, providing, in relevant part, the restructuring of a loan secured by the Helicopter to provide for the principal balance of $761,195.01, to be repaid in four years with an annual interest rate of 3.75 percent, and monthly payments on ten-year amortization beginning July 1, 2021.

8. Pursuant to the Restructuring Agreement, Bluestone executed and delivered to 1st Source new promissory notes in the aggregate principal amount of $10,401,804.81 (the "July 2021 Notes"). Each of the July 2021 Notes is secured by a particular item of collateral described in "EXHIBIT A" to the note. In addition, each item of collateral secures all of the Loan and the Additional Advances pursuant to the terms of the Cross Collateral Agreement.

9. On December 15, 2021, Bluestone executed and delivered to 1st Source the First Amended Loan Obligation Restructure Agreement (the "First Amended Restructuring Agreement"). Pursuant to the First Amended Restructuring Agreement, Bluestone executed and delivered to 1st Source amended promissory notes in the aggregate principal amount of $9,399,991.13 (the "December 2021 Notes").

10. 1st Source and Bluestone subsequently modified the First Amended Restructuring Agreement on October 12, 2022 (the "Modification of the First Amended Restructuring Agreement").

11. 1st Source and Bluestone are continuing to conduct business pursuant to the Loan Agreement and all the above-described documents modifying and amending the Loan Agreement (which are collectively the "Loan Documents").

12. As of October 15, 2023, the aggregate outstanding principal and interest balance owing to 1st Source is $5,073,809.04, not including attorney fees and other charges provided in the Loan Documents.

*Argument*

13. Caroleng first argues that 1st Source "does not present any evidence that it is owed $5,073,809.04," that the amount owed is secured by a lien on the Helicopter, or that the Helicopter is worth approximately $1.2 million. (*See* Resp. at 1 [ECF No. 20].) In addition to the exhibits attached hereto, 1st Source is prepared to and capable of presenting evidence to support its position at an evidentiary hearing on the merits of 1st Source's lien and the distribution of the proceeds of the sale of the Helicopter. 1st Source is not required to present all evidence in support of its position in its initial pleading joining Bluestone's Motion to Stay.

14. Second, Caroleng asserts that "1st Source does not disclose the rest of the collateral pledged by the [Bluestone] and its affiliates," and alleges, "[o]n information and belief, <u>that collateral includes millions of dollars of real estate</u> pledged by third parties, along with a personal guarantee from at least one of [Bluestone's] principals." (*Id.* at 1–2.) 1st Source has now provided to Caroleng copies of documents demonstrating that 1st Source is secured by real estate pledged, not by Bluestone, but by third parties and a personal guaranty of Governor James C. Justice, II. 1st Source is prepared to demonstrate to the Court that it is properly perfected in all of the Collateral and is entitled as a matter of law to all of the proceeds of the sale of the Helicopter.

15. Third, Caroleng argues that "[t]he relationship between [Bluestone] and 1st Source Bank needs to be fully probed before this Court can make a determination as to who has the rights to the proceeds of a sale of the [H]elicopter," alleging further that ". . . 1st Source Bank is potentially over-collateralized, having security interests in the equipment and personal property of [Bluestone], as well as real estate pledged by non-debtor third parties, and a personal guarantee." (*Id.* at 2.) As is entirely consistent with the best practices of a commercial lender in a distressed loan situation, 1st Source is over-secured by the Collateral and Additional Collateral, as a result of negotiations between 1st Source and Bluestone following substantial defaults by Bluestone. The Loan Documents document Bluestone's many defaults and 1st Source's efforts to ensure repayment of the Loan.

16. 1st Source's efforts to ensure repayment are commercially standard and best practices and not, as Caroleng alleges, "an intentional scheme to frustrate judgment creditors like Caroleng." (*See id.*) Caroleng's rhetoric is unsupported by the facts or the law; nonetheless 1st Source is prepared to and capable of defending its banking practices upon sufficient notice and opportunity to respond. To the extent that the Court determines that a further inquiry into 1st

Source's banking practices is appropriate, 1st Source requests that the Court enter a scheduling order requiring Caroleng to file a pleading setting forth its allegations and legal conclusions and to permit a reasonable opportunity for 1st Source to respond and defend itself consistent with ordinary due process protections.

17.     Fourth, Caroleng asserts that "[t]his cozy arrangement between 1st Source Bank and Bluestone may defeat 1st Source Bank's purported first priority lien, based on the doctrine of marshaling." (*See id.*) Caroleng's conclusory arguments show a fundamental misunderstanding of the marshaling doctrine in Virginia. Under Virginia law, for the marshaling doctrine to apply, "both sources of payment must belong to a common debtor." *See Peery v. Elliott*, 44 S.E. 919, 920 (Va. 1903); *see also In re Enfolinc, Inc.*, 233 B.R. 351, 356–57 (Bankr. E.D. Va. 1999) ("One requirement for the doctrine [of marshaling] to be invoked, is that the (*sic*) both sources of payment must belong to the same debtor. Here, all of the additional collateral, other than the assets of the debtor, were pledged by individuals, not the debtor, and are not owned by the debtor. As such, marshaling of assets is inapplicable in this instance." (internal citations omitted)); *Nat'l Valley Bank of Staunton v. Kanawha Banking & Trust Co.*, 145 S.E. 432, 451 (Va. 1928) (The doctrine of marshaling "is applied only where one creditor has a lien against two funds or estates, belonging to the same person, and a junior lienor has a lien against only one of the same funds or estates. The two properties must belong to the same person at the time the person who is invoking the doctrine secured his lien."). Thus, the Additional Collateral owned by third parties and securing 1st Source's interest, cannot support applying the marshaling doctrine to defeat 1st Source's first priority lien on the Helicopter. Bluestone does not own any of the Additional Collateral securing 1st Source's interest and the Collateral owned by Bluestone does not amount to over-securing 1st

Source. Therefore, invoking the doctrine of marshaling to defeat 1st Source's first priority lien on the Helicopter would be contrary to Virginia law.

18. Finally, pursuant to applicable law, the U.S. Marshal would have to sell the Helicopter subject to 1st Source's lien in the Helicopter. Under Federal Rule of Civil Procedure 69 a federal court looks to state law to determine the classifications of property that is subject to attachment and execution. Under Virginia Code § 8.01-480, property subject to a prior senior security interest may still be sold to satisfy a junior interest. But the property is either sold (1) free and clear of the senior interest; or (2) with the senior interest still attached to the property despite the sale. *See Premo Autobody, Inc. v. Parker*, 2017 WL 1612292, at *2 (W.D. Va. Apr. 28, 2017). The property can only be sold free and clear of the senior interest if that interest is due and payable prior to the sale. *See id.* If the property is sold free and clear of the senior interest, the proceeds of any sale go first to the senior security interest and the residue to the satisfaction of the writ. *See id.* If the senior interest remains attached to the property upon its sale, then the proceeds go directly to the judgment creditor. *See id.*

19. Moreover, under Virginia Code § 8.01-478, a writ "shall bind what is capable of being levied on only from the time it is actually levied by the officer . . . ." "[T]he general rule is that a judgment creditor can acquire no greater rights in the property of a debtor than the debtor himself had, where there are no statutory provisions to interfere." *Wiltshire v. Warburton*, 59 F.2d 611, 614 (4th Cir. 1932); *see also Shipe, Cloud & Co. v. Repass*, 69 Va. 716, 723 (1877) ("[W]here statute enactments do not interfere, one creditor can never get by his judgment more than his debtor actually owns, and to this he will be, as he should be, confined by courts of equity.").

> It has been over and over again decided that the judgment creditor can acquire no better right to the estate than the debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it, and subject to all the equities which

7

> exist at the time in favor of third persons; and a court of chancery will limit the lien of the judgment to the actual interest which the debtor has in the estate. The creditor is in no sense a [purchaser]; he has no equity whatsoever beyond what justly belongs to his debtor; his claim is to subject to his lien such estate as the former owns, and no more.

*Wiltshire*, 59 F.2d at 614 (quoting *Floyd v. Harding*, 69 Va. 401, 407 (1877)).

20. A judicial sale of the Helicopter subject to 1st Source's lien would be futile because no rational third party would purchase the Helicopter, which is believed by 1st Source to be worth approximately $1.2 million, if title to the Helicopter is encumbered by a roughly $5 million lien. If the Helicopter is sold free and clear of 1st Source's lien, then pursuant to Virginia law, all proceeds from the sale would go first to satisfy 1st Source's $5,073,809.04 lien. Thus, even if the Helicopter sold for its estimated $1.2 million value, no proceeds would remain to pay Caroleng's junior interest, and the sale would be futile for the purpose advanced by Caroleng.

Dated:  December 27, 2023                                    1ST SOURCE BANK

                                                             By: /s/ *Michael E. Hastings*
                                                                     Of Counsel

Michael E. Hastings (Virginia Bar No. 36090)
J. Benjamin Rottenborn (Virginia Bar No. 84796)
Jamie H. Wood (Virginia Bar No. 97297)
WOODS ROGERS VANDEVENTER BLACK PLC
10 S. Jefferson Street, Suite 1800
Roanoke, VA 24011
Phone: (540) 983-7600
Fax: (540) 983-7711
michael.hastings@wrvblaw.com
ben.rottenborn@wrvblaw.com
jamie.wood@wrvblaw.com

   *Counsel for 1st Source Bank*

8

<u>Certificate of Service</u>

I hereby certify that on the 27th day of December, 2023, I filed a true and correct copy of this document with the Court's CM/ECF system, which will send notification of the same to all counsel of record.

<u>/s/ *Michael E. Hastings*</u>
Michael E. Hastings