<u>Exhibit A</u>

(Aircraft Purchase Agreement with Exhibits)

| | | |
|---|---|---|
| **AIRCRAFT PURCHASE AGREEMENT:** | | **427/56079** |
| **Date:** | | **7 May 2024** |
| **Page:** | | **1 of 4** |

| **SELLER:** | Caroleng Investments Limited<br>Nerine Chambers, P.O. Box 905,<br>Road Town, Tortola<br>British Virgin Islands<br><br>1st Source Bank<br>100 North Michigan Street<br>South Bend, Indiana<br><br>(Signing on behalf of Bluestone<br>Resources Inc., as per Final Sale<br>Order to be entered in the United<br>States District Court for the Western<br>District of Virginia, Case no.<br>1:2023mc00010) | **PURCHASER:** B G Shirke Construction Technology PVT<br>LTD72-67 Industrial Estate<br>Mundhwa, Prune, India 411004 |

| **AIRCRAFT:** | 2009 Bell 427, S/N 56079, N375JC<br>Engine(s): Pratt & Whitney PW 207 S/N's PCE-BF0190 &<br>PCE-BF0191<br><br>Equipped Per Attachment B – Aircraft Specification SN 56079 | **PRICE:** US$1,400,000.00 |

**TERMS AND CONDITIONS - SELLER**

1. Deliver said Aircraft on or before 15 June 2024, or as further mutually agreed by Seller and Purchaser with free and clear title, free of any existing or outstanding liens or encumbrances.

2. Deliver said Aircraft with airframe and engine logbooks; weight and balance data; flight manual; performance data; maintenance records; component historical records on all installed components with clear traceability; wiring diagrams; various equipment operators manuals; other miscellaneous documents and paperwork; covers, plugs and tie-downs, which are normally considered part of the loose equipment delivered with the Aircraft as inspected and verified by Purchaser.

3. Deliver said Aircraft in "As Is" condition with all mandatory Airworthiness Directives, mandatory Service Bulletins and mandatory Service Letters, due at time of delivery, complied with and with all systems and equipment operating normally and in accordance with the manufacturer's specifications and engines meeting or exceeding manufacturer's minimum power specification as inspected and verified by Purchaser.

4. Provide the following documents to the Escrow Agent, McAffe & Taft a bonded escrow and title company located in Oklahoma City, OK (USA): a) An originally executed, undated FAA Bill of Sale from Seller to Purchaser, b) an originally executed, undated Warranty Bill of Sale. c) undated, fully executed FAA Request for US De-registration in Favor of India and d) Lien release, if applicable. (See Attachment A – Escrow Instructions).

**TERMS AND CONDITIONS - PURCHASER**

1. Purchaser shall provide a refundable deposit of US$100,000.00 to the Escrow Agent (See Attachment B - Wire Transfer Instructions), to remove the Aircraft from the market pending completion of a Pre-Purchase Inspection (PPI) and a successful Power Assurance Check, scheduled to occur on or before 3 May 2024. Immediately upon successful PPI and Power Assurance Check, Purchaser shall provide written notification to the Escrow Agent, (Attachment C, Aircraft Acceptance and Delivery Agreement) and deposit shall become non-refundable and released to Seller at final closing. In the event the PPI is unsuccessful, and the Aircraft is rejected by Purchaser all deposits held in the Escrow Account shall be returned to Purchaser and this Agreement shall be terminated.

AIRCRAFT PURCHASE AGREEMENT: 427/56079
Date: 7 May 2024
Page: 2 of 4

2. Purchaser shall provide to the Escrow Agent balance and payment in full of US$1,300,000.00 for final closing on or before 30 May 2024 and release same to Seller immediately upon receipt of all documents outlined in number 4 above, Terms and Conditions (Seller). (See Attachment B – Wire Transfer Instructions).

3. Purchaser shall remediate all discrepancies identified in Quote Number 2403-29 RWA#1, Item 600.01, 600.03, 630.04 and 600.11 reference Attachment E, Airworthy Discrepancies and all Non-airworthy Discrepancies as identified. All cost shall be at Purchasers expense.

| ATTACHMENTS | | EXHIBITS - to ESCROW AGREEMENT | |
|---|---|---|---|
| A - | Escrow Agreement – McAfee & Taft | A - | Wire Transfer Instructions |
| B - | Aircraft Specification SN 56079 | B - | Documents |
| C - | Acceptance & Delivery Agreement | C - | Closing Notice |
| | | D - | Schedule 1 – Transaction Amounts |

Seller: ▮▮▮▮▮▮▮▮

ZACHARY MAZUR
ATTORNEY to CAROLENG

Purchaser: ▮▮▮▮▮▮

AJAY SHIRKE
DIRECTOR

| | |
|---|---|
| **AIRCRAFT PURCHASE AGREEMENT:** | **427/56079** |
| **Date:** | **7 May 2024** |
| **Page:** | **2 of 4** |

2.  Purchaser shall provide to the Escrow Agent balance and payment in full of US$1,300,000.00 for final closing on or before 30 May 2024 and release same to Seller immediately upon receipt of all documents outlined in number 4 above, <u>Terms and Conditions (Seller)</u>. (See Attachment B – Wire Transfer Instructions).

3.  Purchaser shall remediate all discrepancies identified in Quote Number 2403-29 RWA#1, Item 600.01, 600.03, 630.04 and 600.11 reference Attachment E, Airworthy Discrepancies and all Non-airworthy Discrepancies as identified. All cost shall be at Purchasers expense.

| ATTACHMENTS | | EXHIBITS - to ESCROW AGREEMENT | |
|---|---|---|---|
| A - | Escrow Agreement – McAfee & Taft | A - | Wire Transfer Instructions |
| B - | Aircraft Specification SN 56079 | B - | Documents |
| C - | Acceptance & Delivery Agreement | C - | Closing Notice |
| | | D - | Schedule 1 – Transaction Amounts |

**Seller:** 

EVP, 1st Source Bank

**Purchaser:**

AJAY SHIRKE
DIRECTOR

**AIRCRAFT PURCHASE AGREEMENT:**

| | |
|---|---|
| | 427/56079 |
| Date: | 7 May 2024 |
| Page: | 3 of 4 |

## GENERAL TERMS AND CONDITIONS

### OWNERSHIP/LIENS
Seller represents and warrants that the aircraft/equipment will be free and clear of all liens and encumbrances at time of purchase and full legal rights and title shall pass to Purchaser at delivery. Purchaser agrees that funds paid to Seller may be used to obtain release of any liens.

### BREACH OF CONTRACT
Should Seller fail to deliver aircraft/equipment within the time specified or in the condition as agreed, unless default is caused by an act of, or failure to act by, the Manufacturer, or any condition beyond the control of the Seller, then, upon written request of the Purchaser, all deposits paid to Seller shall be returned and this agreement shall be considered null and void. Should Purchaser fail to comply with this agreement, or fail to close within the time specified, then, at the option of Seller, any funds paid to Seller by Purchaser shall be forfeited and retained by Seller as liquidated damages.

### RESPONSIBILITY FOR CERTAIN LOSSES
Neither party shall hold the other responsible for loss or damage to its property or injury or death of its employees, agents or representatives at the facilities of the other party in the course of performance of this agreement, except as a result of the other party's gross negligence. The foregoing applies, without limitation, to losses caused by mechanical defects, parts failure, or accident. Risk of loss shall pass to Purchaser upon execution of receipt acknowledging delivery of Aircraft.

### WARRANTIES
Unless otherwise indicated in this agreement, Purchaser agrees that the aircraft/ equipment is being purchased in "As Is" condition and as such No Warranties, either express or implied, are valid on any part, component, or piece of equipment installed on the aircraft. This is not to imply that any warranties by manufacturers or facilities other than the Seller would not be in effect if applicable.

### CAPE TOWN TREATY
At Purchaser's cost, the parties agree to cooperate, register as users of, and perform such acts as necessary to register at Closing, Purchaser's purchase of the Aircraft including, without limitation, its engines, under Convention of International Interests in Mobile Equipment, the Protocol to the Convention on Matters Specific to Aircraft Equipment and the regulations and procedures issued thereunder (collectively, the "Cape Town Convention"). Notwithstanding any provision in this Agreement to the contrary, Purchaser does not have any right to and shall not, claim, file or assert any lien, right or interest with respect to the Aircraft under the Cape Town Convention prior to the Closing Date, without Seller's prior written consent. The parties agree to indemnify and hold one another harmless for all costs and expense incurred by the parties as a result of the other party's breach under this paragraph and the parties, at their option, may declare such action to be a default of this Agreement.

### INSPECTION/ACCEPTANCE
Purchaser agrees to accept aircraft/equipment in condition as represented by this Purchase Agreement and all Attachments.

### PRICES AND PAYMENTS
All payments shall be made in United States dollars.

### TAXES AND FEES
Purchaser agrees, in addition to price specified herein, to pay all taxes, duties or imposts, or any other charges which are levied, assessed, or required by law to be paid, applicable to the purchase of said aircraft/equipment, exclusive of Sellers income taxes.

### FORCE MAJEURE
If Seller shall be unable to perform its obligations under this Agreement because of intervention of a Force Majeure event, which term shall include but not be limited to strikes, lockouts, or other labor disturbances, riots, epidemics, war, government actions, inactions or regulations, fire, weather, difficulty in obtaining qualified parts or materials, failure of performance by subcontractors or other causes beyond its control, Seller shall not be responsible for delays in acceptance, delivery or performance under this Agreement. Seller shall give reasonable notice to Purchaser upon the occurrence of an event of Force Majeure. If a delay in delivery or performance extends beyond 180 days from the scheduled date of Acceptance specified in this Agreement, either party may terminate this Agreement, whereupon the sole liability of Seller shall be to return any payments made by Purchaser for Equipment not delivered.

### WAIVER PROTECTION
If any provision of this agreement is or becomes null or unenforceable by force of law, the other provisions shall remain valid and enforceable. Waiver of one provision by either party shall not act as waiver of any other provision.

### LEGAL REQUIREMENTS
Seller and Purchaser expressly agree to exclude from this Agreement the United Nations Convention on Contracts for the International Sale of Goods, 1960, and any successor thereto. This Agreement shall be governed in all respects and shall be construed, and the legal relationships between the parties shall be determined, in accordance with applicable commercial law of the State of Illinois, U.S.A., including, but not limited to, The Uniform Commercial Code, as the same may be enacted and in force from time to time in that jurisdiction that this is a binding contract and as such complies with all legal requirements, regulations, and policies covering such agreement as determined by the laws of the State of Illinois. Seller and Purchaser further agree that any lawsuit or legal action arising from this agreement shall be filed in the State of Illinois. Seller and Purchaser agree that this agreement, inclusive of all attachments, constitutes the entire agreement and any changes or amendments shall be in writing and signed or initialed by both parties.

### EXPORT REGULATIONS
Purchaser acknowledges that the United States laws and regulations may require specific authorization (including export licensing) by the U.S. government. Purchaser acknowledges and agrees that equipment shall not be operated, transferred, or re-exported to any country in violation of U.S. government export regulations, including being leased by Purchaser to any of these embargoed countries.

---

Seller: ███████████

ZACHARY MAZUR
Attorney do Carolene

Purchaser:  ███████████

AIRCRAFT PURCHASE AGREEMENT:  427/56079
Date:  7 May 2024
Page:  4 of 4

| ACCEPTANCE |
| --- |

The signatories to this Agreement verify that they have read the complete Agreement, understand its contents, and have full authority to bind and hereby do bind their respective companies.

| Seller: | Caroleng Investments Limited On behalf of Bluestone Resources Inc. | Purchaser: | B G Shirke Construction Technology PVT LTD |
| --- | --- | --- | --- |
| Signature: | | Signature: | ▆▆▆▆▆▆▆▆ |
| Name/Title: | ▆▆▆▆▆▆▆ ZACHARY LASZUR, Attorney | Name/Title: | MR. AJAY SHIRKE DIRECTOR |
| Date: | 5/20/24 | Date: | 20th MAY 2024 |

| Seller: | 1st Source Bank On behalf of Bluestone Resources Inc. | | |
| --- | --- | --- | --- |
| Signature: | | | |
| Name/Title: | | | |
| Date: | | | |

AIRCRAFT PURCHASE AGREEMENT:    427/56079
Date:    7 May 2024
Page:    4 of 4

| ACCEPTANCE |
|---|
| The signatories to this Agreement verify that they have read the complete Agreement, understand its contents, and have full authority to bind and hereby do bind their respective companies. |

| Seller: | Caroleng Investments Limited On behalf of Bluestone Resources Inc. | Purchaser: | B G Shirke Construction Technology PVT LTD |
|---|---|---|---|
| Signature: | | Signature: | |
| Name/Title: | | Name/Title: | MR. AJAY SHIRKE DIRECTOR |
| Date: | | Date: | 20ᵗʰ MAY 2024 |

| Seller: | 1st Source Bank On behalf of Bluestone Resources Inc. |
|---|---|
| Signature: | |
| Name/Title: | Jeff Buhr, EVP |
| Date: | 5/20/24 |

**ATTACHMENT A**

**APA 427/56079**

**ESCROW AGREEMENT**

This Escrow Agreement (this "**Agreement**") is entered into as of this _20ᵗʰ_ day of May, 2024, between and among the following:

(i)    **Caroleng Investments Limited ("Caroleng")**, or its assigns, a company incorporated under the laws of the British Virgin Islands, having its registered office at Nerine Chambers, P.O. Box 905, Road Town Tortola, British Virgin Islands,; and **1st Source Bank**, a state-chartered bank organized under the laws of Indiana, with its principal place of business located at 100 North Michigan Street, South Bend, Indiana ("**1st Source**", together with Caroleng, the "**Seller**");

(ii)    **B G Shirke Construction Technology PVT LTD**, a company organized and existing under the laws of India, and with its registered office at 72-67 Industrial Estate, Mundhwa, Prune, India 411004 ("**Buyer**"); and

(iii)    **McAfee & Taft A Professional Corporation**, as escrow agent, with address of 8ᵗʰ Floor, Two Leadership Square, 211 North Robinson, Oklahoma City, Oklahoma 73102-7103, Attn: Brian A. Burget (the "**Escrow Agent**"). Buyer and Seller are collectively referred to herein as the "**Parties**."

W I T N E S S E T H :

WHEREAS, Buyer and Seller desire to enter into a purchase and sale agreement ("**Sale Agreement**"), whereby Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller, that certain 2009 Bell Helicopter Textron Canada Model 427, Serial No. 56079 FAA registration number N375JC, including all logs and records, all accessories, attachments, parts, repairs, additions, accessions, substitutions, exchanges relating to the helicopter (as more particularly defined and described in the Sale Agreement, the "**Equipment**").

WHEREAS, Seller has obtained Court approval to enter into this Agreement, as well as the Sale Agreement, by entry of the *Initial Sale Order*, entered on March 1, 2024 by the United States District Court for the Western District of Virginia, (the "**Virginia Court**") in the judgment enforcement proceedings captioned *Caroleng Investments Limited v. Bluestone Resources, Inc.*, Case No. 7:23-cv-10010-RSB (the "**Virginia Proceedings**").

WHEREAS, the Parties desire to employ the Escrow Agent to receive the Escrow Funds (as defined below) and the Documents (as defined below) from the respective Parties hereto, as the case may be, and deliver the same according to the terms of this Agreement and the Sale Agreement;

-1-

WHEREAS the Escrow Agent consents to the jurisdiction of the Virgnia Court with respect to all decisions and disputes relating to this Agreement; and

WHEREAS, the Deposit (as defined below) will be applied toward the Purchase Price according to the terms and conditions of this Agreement and the Sale Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual agreements contained herein, the Parties hereto agree as follows:

1. Deposit of Funds.

    a.   Deposit. Within three (3) Business Days of the date of this Agreement, Buyer shall deposit with the Escrow Agent the deposit amount set forth in Schedule 1 (the "**Deposit**").

    b.   Purchase Price. Prior to the Closing, Buyer shall deposit or cause to be deposited funds in an amount such that the Escrow Funds equal the Deposit and the Balance of the Purchase Price set forth in Schedule 1 plus one-half of the Escrow Agent's Fees. The Deposit and any other amounts paid into escrow pursuant to this Agreement and the Sale Agreement are referred to herein collectively as the "**Escrow Funds**." All Escrow Funds shall be sent to, and remitted from, Escrow Agent in United States Dollars. The Escrow Funds shall be held for the benefit of the Parties pursuant to the terms and conditions of this Agreement and the Sale Agreement.

All of the foregoing funds shall be deposited into the Escrow Account according to the wire transfer instructions set forth on **Exhibit A** attached hereto.

The Deposit shall be refundable to the remitter of such funds except as set forth in the Sale Agreement and shall be applied towards the Purchase Price in accordance with this Agreement and the Sale Agreement.

Escrow Agent shall notify all Parties of receipt of Escrow Funds or any part thereof immediately upon the later of (i) receipt of the Escrow Funds or (ii) signing of this Agreement and provide periodic statements thereafter. The issuance by the Escrow Agent of such notification shall mean the Escrow Funds, as held by the Escrow Agent, are considered by the Escrow Agent as integral to the transaction within the meaning of, and in accordance with, Section 4(a) herein.

    c.   Deposit Return. Upon the occurrence of an event triggering the return of the Deposit to Buyer (as set out in Sale Agreement, and referred to herein as a "**Deposit Return Event**"), Buyer shall provide written notice to Seller and the Escrow Agent specifying the Deposit Return Event and provide wire instructions for the return of the Deposit to the Escrow Agent ("**Deposit Return Notice**"). Seller shall have three (3) Business Days from receipt of the Deposit Return Notice to object to the Deposit Return Notice by sending written notice of such objection to Buyer and Escrow Agent. If the Escrow Agent does not receive such timely objection, Escrow Agent shall return the Deposit in accordance with the Deposit Return Notice. For clarity, should the Deposit be refunded, it shall be returned to the remitter of such funds, unless evidence, to the sole satisfaction

of Escrow Agent, has been provided by Buyer to Escrow Agent that supports directing the Deposit elsewhere.

        d.    **Deposit Retention**.  Upon the occurrence of an event triggering the payment of the Deposit to Seller (i.e., other than closing the sale and purchase of the Equipment) (as set out in the Sale Agreement, and referred to herein as a "**Deposit Retention Event**"), Seller shall provide written notice to Buyer and the Escrow Agent specifying the Deposit Retention Event and provide wire instructions for the transfer of the Deposit to the Escrow Agent ("**Deposit Retention Notice**"). Buyer shall have three (3) Business Days from receipt of the Deposit Retention Notice to object to the Deposit Retention Notice by sending written notice of such objection to Seller and Escrow Agent. If the Escrow Agent does not receive such timely objection, Escrow Agent shall transfer the Deposit to Seller in accordance with the Deposit Retention Notice. For clarity, should the Deposit be subject to a Deposit Retention Event and remitted to Seller pursuant to this Section, it shall be sent to an account of Seller, unless evidence, to the sole satisfaction of Escrow Agent, has been provided by Seller to Escrow Agent that supports directing the Deposit elsewhere.

        e.    **Deposit Settlement**.  If Escrow Agent and either Buyer or Seller (as applicable) receive a timely notice of objection from the relevant party, then Escrow Agent shall not distribute any portion of the Deposit until the Escrow Agent receives either (A) joint written instructions signed by Buyer and Seller authorizing the release of the Deposit (as directed therein), or (B) a final and non-appealable order of any court of competent jurisdiction directing the release of the Deposit. Upon receipt of such joint written instructions or such final and non-appealable order, as the case may be, the Escrow Agent shall release the Deposit in accordance with such written instructions or such final and non-appealable order.

        2.    **Escrow Account**.  The Escrow Account as set forth in **Exhibit A** is an interest-bearing sweep account. Interest, if any, associated with the Escrow Account will be retained by Escrow Agent and will not be remitted to the Parties. The Parties will not receive interest on the Escrow Funds. The Escrow Agent's wiring deadline for transferring funds out of the Escrow Account is 3:30 p.m., Central Time.

        3.    **The Banks**.  The Parties hereto agree that Escrow Agent shall not be liable or responsible in any respect for any losses or damages as may result or allegedly result from any act or omission of the bank in which the Escrow Funds are held, or any other bank that may hold or transmit the Escrow Funds from time to time (collectively, the "**Banks**"), including any failure of the Banks to correctly follow any instructions of the Escrow Agent, or the failure, insolvency or bankruptcy of the Banks or the appointment of any receiver or similar official for the Banks.

        4.    **U.S.A. Patriot Act Compliance**.  The "Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (U.S.A. Patriot) Act of 2001," Pub. L. No. 107-56 (the "Patriot Act") requires certain due diligence in connection with transactions involving "financial institutions" as defined therein. The Escrow Agent believes that it is not a "financial institution" as defined in the Patriot Act and that this transaction is otherwise specifically exempt from the requirements of the Patriot Act, and in support of such:

a. Any funds wired to the Escrow Agent must come directly from Buyer and from an account held in the name of Buyer, respectively (not a parent, subsidiary, related company, officer or director), all funds must be funds which are an integral part of the transaction, and Escrow Agent may only wire funds at closing to parties that are an integral part of the transaction; and

b. As a precautionary matter, the Escrow Agent maintains a Customer Identification Program ("**CIP**") in accordance with the Patriot Act. In accordance with the CIP, each Party hereby acknowledges that the name of the party as noted above is accurate and the address noted herein is its principal place of business. Each Party hereby agrees to provide Escrow Agent with information pertaining to the formation, existence, management and ownership of any party who will send or receive funds as part of the transactions contemplated by this Agreement. Each Party hereby confirms that neither it nor its owners, management or any affiliates appear on or are based or do business in the following list of known or suspected terrorist organizations and sanctioned or prohibited countries: Financial Action Task Force on Money Laundering list of High-risk and non-cooperative jurisdictions (http://www.fatf-gafi.org); United States Department of the Treasury, Office of Foreign Assets Control Specifically Designated Nationals and Blocked Persons (SDN List) (http://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx); United States Department of Commerce, Bureau of Industry and Security Lists of Parties of Concern (http://www.bis.doc.gov/index.php/policy-guidance/lists-of-parties-of-concern).

5. Deposit of Documents and PUE Authority. The instruments listed on **Exhibit B** attached hereto (collectively, the "**Documents**"), copies or originals as noted and duly executed by the Parties thereto, shall be delivered to the Escrow Agent on or before the Closing Date. Further, the Parties agree to provide Escrow Agent with the requisite professional user entity (PUE) authority to register all applicable contracts of sale and/or international interests on International Registry, as specified in the Sale Agreement or otherwise directed by the Parties. As described in the Initial Sale Order, the Documents include the entry of a Final Sale Order by the Virginia Court (the "**Final Sale Order**"), in aide of effectuating transfer of title.

6. Closing. The closing of the sale and purchase of the Equipment shall be as follows:

a. As soon as it is in a position to do so, Escrow Agent shall confirm to the Parties that it has received and is holding (as applicable) (i) the Escrow Funds, and (ii) the Documents and/or the Final Sale Order. Thereafter, on a date to be mutually agreed by the Parties (the "**Closing Date**"), and subject to all conditions in the Sale Agreement being satisfied or waived by the Parties: (i) the Parties shall execute the **Closing Notice** which is attached hereto as **Exhibit C**, and provide such Closing Notice to the Escrow Agent. Once provided and released to Escrow Agent per Section 6(b), such Closing Notice shall be irrevocable.

b. Upon Escrow Agent's receipt of the Escrow Funds, the Documents and a copy of the Closing Notice from each of Buyer and Seller, and a final order of the Virginia Court authorizing the Escrow Agent to proceed to closing, each properly executed by the respective Parties and the Virginia Court, the Escrow Agent shall immediately do the following (collectively, the "**Closing Actions**"):

-4-

        (i)    disburse the Escrow Funds to Seller pursuant to the wire transfer instructions provided by Seller to Escrow Agent (less the Escrow Agent's Fee);

        (ii)    date and distribute or file the Documents, along with the Final Sale Order, as appropriate;

        (iii)   make the appropriate registrations on the International Registry;

        (iv)   retain payment of the Escrow Agent's Fee for acting as such; and

        (v)    confirm the foregoing action to the Parties.

        c.    The Escrow Agent will complete the Closing Actions noted in this section as simultaneously as practicable. The Parties hereto understand and agree that once the Escrow Agent commences any one of the Closing Actions noted above, upon satisfaction of all obligations herein and in the Sale Agreement, Escrow Agent will complete all of the Closing Actions regardless of any conflicting instructions or requests from the Parties.

        7.    Term. The terms and conditions of this Agreement shall commence on the date hereof and shall continue until the earliest of:

        a.    such time as the Escrow Funds and Documents have been distributed by Escrow Agent pursuant to the Closing Actions noted in Section 6(b) of this Agreement,

        b.    the Escrow Agent has received and distributed the Escrow Funds pursuant to a Deposit Return Notice or Deposit Retention Notice,

        c.    the Escrow Agent has received a final and non-appealable order of the Virginia Court authorizing the closing,

        d.    the Escrow Agent has received join written notice executed in counterpart by the Parties which (i) instructs the Escrow Agent that this Agreement has been terminated, and (ii) advises Escrow Agent which of the Parties shall receive the Escrow Funds and provides wiring instructions for such transfer, or

        e.    this Agreement has been lawfully terminated by a final and non-appealable order of any court of competent jurisdiction and Escrow Agent has been directed therein to distribute the Escrow Funds.

Upon such return of the Escrow Funds by the Escrow Agent, this Agreement shall terminate and all of the parties hereto shall be released from any further duties, obligations or liabilities hereunder, except the obligation of Buyer and Seller to pay any fees and expenses incurred by the Escrow Agent as provided herein; and provided, however, the parties shall have such remedies and rights as may be provided in the Sale Agreement.

8.   Limitation of Escrow Agent's Liability. The Escrow Agent shall not be liable for any action taken or omitted to be taken by it while acting in good faith and in the exercise of its judgment, under this Agreement or any instrument executed pursuant hereto, or in connection herewith or therewith, except for its own willful, criminal misconduct or gross negligence, nor be responsible for the effectiveness, enforceability, validity or due execution of this Agreement or any instrument executed pursuant hereto including without limitation the Closing Notice. The Escrow Agent shall be entitled to rely upon advice of counsel concerning legal matters and upon any notice, consent, certificate, statement, signature or writing which it believes to be genuine and to have been presented by a proper person. Any document or instrument delivered to the Escrow Agent which purports to have been signed or executed by any of the Parties and/or other persons shall be conclusive evidence (absent the Escrow Agent's willful criminal misconduct or gross negligence) that the person or entity signing on behalf of the Parties and/or other person, as applicable, had full and complete authority to sign and deliver the document or instrument on behalf of such party and/or person, and the Escrow Agent shall be entitled to rely, without investigation, upon the authenticity thereof. In the event of any disagreement between any of the Parties, or between them or any of them and any other person, resulting in divergent or adverse claims or demands being made in connection with the subject matter of this Agreement, or in the event the Escrow Agent, in good faith, is in doubt as to what action should be taken hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not be or become liable in any way or to any person for its good faith failure or refusal to act; and the Escrow Agent shall be entitled to continue to so refrain from acting until (i) the rights of the parties shall have been fully and finally adjudicated by a court of competent jurisdiction or (ii) all differences shall have been adjusted and all doubt resolved to the satisfaction of the Escrow Agent by agreement among all of the interested persons and the Escrow Agent shall be notified thereof in writing signed by all such persons and entities. Further, in the event of any such dispute or controversy, the Escrow Agent may, in its sole discretion, institute an interpleader action, a declaratory judgment or other appropriate legal action in the District Court of Oklahoma County, Oklahoma, to determine the rights of the parties involved. Should action be instituted, or should the Escrow Agent become involved in legal proceedings in any manner whatsoever on account of this Agreement, the Documents or the Escrow Funds, the Parties hereby bind and obligate themselves and their heirs, personal representatives, successors and assigns to pay Escrow Agent the reasonable attorneys' fees incurred by Escrow Agent to retain legal counsel, as well as any other disbursements, expenses, losses, costs or damages in connection with or resulting from such litigation, except such as may have been caused by the gross negligence or willful, criminal misconduct of the Escrow Agent.

As between themselves and the Escrow Agent, the Parties agree to indemnify and hold the Escrow Agent harmless from all losses, costs, damages, expenses and attorneys' fees suffered or incurred by Escrow Agent arising from acts or omissions of the Escrow Agent in the good faith performance of or pursuant to or in connection with this Agreement, except such acts or omissions as may be the result of the Escrow Agent's gross negligence or willful, criminal misconduct.

9.   Notices. Any notice or communication hereunder shall be given in writing by serving the same upon the party to whom the notice is addressed via overnight courier service or by

-6-

certified mail, return receipt requested, at the addresses set forth in the opening paragraph of this Agreement, or by email to the email address identified on the signatory page hereto.

10.     Liens and Encumbrances.  As part of its duties hereunder, the Escrow Agent shall examine the records of the Federal Aviation Administration Civil Aircraft Registry, as applicable, and the Cape Town International Registry, as applicable, to determine the status of liens and encumbrances in relation to the Equipment.  The Escrow Agent's fee for performing such services shall be included in the Escrow Agent's Fees noted in Section 11 of this Agreement.

11.     Escrow Agent's Fees.  Escrow Agent shall be paid $4,000.00 USD when acting in the capacity of escrow agent under this Agreement (the "**Escrow Agent's Fee**").  Buyer and Seller shall each be obligated to Escrow Agent for one-half of Escrow Agent's Fee.

12.     Governing Law.  This Agreement and any performance hereunder shall be governed by, and construed in accordance with the laws of the State of Oklahoma.

13.     Entire Agreement.  This Agreement constitutes the entire agreement of the Parties and Escrow Agent hereto regarding the terms of the escrow and, as of the effective date of this Agreement, the terms and provisions contained herein shall supersede all other agreements between the parties hereto with respect to the terms of the escrow, and this Agreement shall not be amended, altered or otherwise modified except by written agreement signed by all of the parties hereto.  In the event of any conflict between the terms the Sale Agreement and this Agreement regarding the escrow, the terms of this Agreement shall prevail.

14.     Email/Digital Signatures and Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. The parties agree that this Agreement is valid and binding upon the execution and delivery of same by transmission of .pdf signature via email or by digital express signature (e.g., DocuSign).  The Escrow Agent may rely and act upon email communication of any notice or instruction described herein.  The Escrow Agent shall have no responsibility or duty to ascertain the truthfulness or accuracy of any instruments contemplated herein, including notice or instructions and the Escrow Agent may assume that the persons executing any such instruments, including notices or instructions, had the authority to do so.

15.     Escrow Agent's Representation of Parties.  The Parties acknowledge and agree the Escrow Agent may have in the past performed escrow, Federal Aviation Administration and/or international registry legal services for Buyer and/or Seller and may be asked by Buyer and/or Seller to provide such legal services in the future.  Buyer and Seller hereby agree to that representation and hereby waive any and all conflicts of interest that may arise from that representation and the Escrow Agent's performance of the undertakings provided in this Agreement.  Buyer, Seller and Escrow Agent further agree that Escrow Agent's rights, obligation and duties pursuant to this Agreement are in no way affected by such representation.

[Signature pages follow.]

-7-

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

B G Shirke
Construction Technology
(Pvt) Ltd

By: ...

Name: AJAY SHIRKE

Title: DIRECTOR

Email: a.shirke@cadenceaudio.com

Phone Number: +447827373335

**SELLER:**
**CAROLENG INVESTMENTS LIMITED**

Name: ZACHARY MAZUR, esq.

Title: Attorney.

Email: zachary@sarachkelawfirm.com

Phone Number: (646) 519 4396

and

**1ST SOURCE BANK**

By:

Name:

Title:

Email:

Phone Number

-8-

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

B.G. Shirke Construction Technology (Pvt) Ltd.

By: _____

Name:  AJAY SHIRKE

Title:  DIRECTOR

Email: a.shirke@cadenceaudio.com

Phone Number: +447827373335

**SELLER:**
**CAROLENG INVESTMENTS LIMITED**

By: _____

Name: _____

Title: _____

Email: _____

Phone Number: _____

and

**1ST SOURCE BANK**

By: _____

Name:  Jeff Buhr

Title:  EVP

Email:  BuhrJ@1stsource.com

Phone Number:  574-235-2412

-8-

**ESCROW AGENT**
**McAFEE & TAFT A PROFESSIONAL CORPORATION**

Name: Brian A. Burget
Title: Vice President
Email: brian.burget@mcafeetaft.com
Phone Number: (405) 552-2205

-9-

## EXHIBIT A
## Wire Transfer Instructions of Escrow Agent

**Bank of America, N.A.**

**222 Broadway, New York, New York USA 10038**

**Swift Code:  BOFAUS3N**

**ABA# 026009593**

**Account # 305010194407**

**McAfee & Taft Aircraft Account**

**Attn: Tracy Thornton – (405) 235-9621**

**Re: [Party Reference + MSN]**

.

**EXHIBIT B**

**The Documents**

Ffrom Seller:

1.      An executed copy of the Escrow Agreement;

2.      An executed copy of the Sale Agreement;

3.      Final Sale Order, entered by the Virgina Court;

4.      An executed copy of the Closing Notice.

From Buyer:

1.      An executed copy of the Escrow Agreement;

2.      An executed copy of the Sale Agreement;

3.      [_____]

4.      An executed copy of the Closing Notice.

-11-

## EXHIBIT C

### Closing Notice

_____, 202_

McAfee & Taft
A Professional Corporation
8th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102-7103
Attention: Brian A. Burget
Via Fax:  405-228-7405
brian.burget@mcafeetaft.com

RE:     [_____]

Ladies and Gentlemen:

Pursuant to Section 6 of the Escrow Agreement dated as of _____ ___, 202_, among [_____] ("**Seller**"). [_____] ("**Buyer**") and McAFEE & TAFT A PROFESSIONAL CORPORATION, as escrow agent (the "**Escrow Agent**"), the Escrow Agent is hereby instructed to (1) release the Escrow Funds, and (2) date and distribute or file the Documents, all pursuant to the Escrow Agreement.

[signature page to follow]

-12-

IN WITNESS WHEREOF, the parties hereto have executed this Closing Notice as of the day and year first above written.

BUYER: B.G Shirke Construction Technology Pvt Ltd

By: _____

Name: AJAY SHIRKE

Title: DIRECTOR

Email: a.shirke@cadenceaudio.com

Phone Number: +447827373335

-13-

**SELLER:**
**CAROLENG INVESTMENTS LIMITED**

████████████████████

Name: ZACHARY MAZUR, ESQ.

Title: Attorney.

Email: Zachary@sarachcklawfirm.Com

Phone Number: (646) 519 4396

and

**1ST SOURCE BANK**

By: _____

Name: _____

Title: _____

Email: _____

Phone Number: _____

-14-

**SELLER:**
**CAROLENG INVESTMENTS LIMITED**

By: _____

Name: _____

Title: _____

Email: _____

Phone Number: _____

and

**1ST SOURCE BANK**

By: _____

Name: _____

Title: _____

Email: _____

Phone Number: _____

-14-

## SCHEDULE 1

TRANSACTION AMOUNTS

Deposit equals $ [ 100,000/- ].

Balance of the Purchase Price equals $ [ 1300000/- ].

-15-

## ATTACHMENT B

## AIRCRAFT SPECIFICATION

### APA NO: 427/56079

---

**Exterior:**
* White Base with Dark Blue and Red Accent Stripes

**Interior:**
* Corporate Interior w/Standard 6-Place Club Seating in Blue Leather, Carpet and Soundproofing Kit

**Optional Equipment & Accessories:**
* Dual Controls
* Rotor Brake
* Air Comm Dual Evaporator Air Conditioning System
* Air Comm Bleed Air Heater
* Dual Inlet Barrier Filtration Systems
* Wire Strike Protection System
* 28 Amp Hour Battery
* Engine Fire Extinguishers
* NR Select Switch
* Headliner w/AC Ducts

* AAI Cabin & Crew Floor Protectors
* AAI Sliding Window Latch Kit (STC SR02072AT)
* AAI Step Handle 2 Ea LH & RH
* AAI Automatic Door Openers 2 Crew/2 Pax
* AAI Dual Control Safety Kit
* AAI T/R Pedal Lockout Kit
* Whelen Landing Light, Taxi Light & Tail Position Light
* Whelen Anti-Collision Light on Tail
* Bell Fly-Away Kit

**Avionics:**
* Garmin GMA 35 Remote Audio Control Panel
* Garmin GTN 750 VHF COMM/NAV/GPS
* Garmin SL 40 #2 VHF COMM
* Garmin GTX 345R Remote Transponder w/ADS-B Out/In
* Garmin GRA 5500 Radar Altimeter
* Garmin GDL 69A Data Link

* Garmin G500 Electronic Flight Display System
* Garmin GT 800 TAS
* Pilot Standby Instruments (Airspeed & Altimeter)
* Avionics Master Switch
* Spidertrack S3 System
* Artex ELT w/Remote Switch

Seller: 

Purchaser:

Specifications subject to verification upon inspection.
Price and times subject to change without notice.
Aircraft offered subject to prior sale or withdrawal from market.

*ATTACHMENT C*

*AIRCRAFT ACCEPTANCE & DELIVERY AGREEMENT*

*APA 427/56079*

TO:   **Caroleng Investments Limited**
      **Nerine Chambers, P.O. Box 905,**
      **Road Town, Tortola**
      **British Virgin Islands**

      **1st Source Bank**
      **00 North Michigan Street**
      **South Bend, Indiana**

This Acceptance & Delivery Agreement is made and entered into by the following Individual/Company, herein referred to as "Purchaser".

**PURCHASER INFORMATION**

COMPANY:     *B G Shirke Construction Technology PVT*
             *LTD72-67 Industrial Estate*
             *Mundhwa, Prune, India 411004*

---

**AIRCRAFT / EQUIPMENT INFORMATION**

1.   *2006 Bell 407, S/N 53714, N686RH*

**Add Attachments As Required**

---

**TERMS AND CONDITIONS OF AGREEMENT**

1.   I, Ajay Shirke, hereby known as Purchaser, acknowledge that we, and/or our designated representative, have personally inspected the Aircraft described above, and have determined that all systems, avionics, engines and its accessories, rotors and airframe are in working order and meet, or exceed my expectations, and are within my acceptable limits and condition.
2.   Further, we and/or our designated representative, have inspected all of the log books and related airworthy paperwork associated with this aircraft and find that all documents and required maintenance inspections are in satisfactory order and are determined by me and my designated representative, find the aircraft to be in airworthy condition.
3.   EXCEPT AS SET FORTH HEREIN, SELLER(S) AND HIS AGENT(S) MAKE NO WARRANTIES OF ANY NATURE, EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO, WARRANTY OR MERCHATABILITY AND THE WARRANTY OF FITNESS OR AIRWORTHINESS FOR A PARTICULAR PURPOSE, IN REGARD TO THE DESCRIBED AIRCRAFT. PURCHASER(S) ACCEPTS THIS AIRCRAFT IN "AS-IS", "WHERE-IS" CONDITION AND WITH ANY AND ALL FAULTS, KNOWN OR UNKNOWN. ACCEPTANCE IS NOT BASED UPON ANY REPRESENTATION OR WARRANTIES OF CONDITION WHICH MAY HAVE BEEN MADE BY THE SELLER(S) OR AGENT(S).

**I have personally read and fully understand and accept all conditions made in this agreement.**

**PURCHASER ACCEPTANCE: - AIRCRAFT**

SIGNATURE:

NAME/TITLE:   MR. AJAY SHIRKE. DIRECTOR

DATE:   20th MAY 2024

*Acceptance & Delivery Agreement*
**PAGE 2 OF 2 PAGES**

4. The undersigned Purchaser hereby accepts final delivery of the Aircraft at RSG facilities, Fort Worth, Texas, per the terms and conditions in Aircraft Purchase Agreement 427/56079 dated 7 May 2024.

5. Purchaser hereby accepts full responsibility for any and all federal, state and local taxes specific to the purchase of this aircraft exclusive of Sellers Federal Income taxes.

**I have personally read and fully understand and accept all conditions** ███████ **s agreement.**

*PURCHASER ACCEPTANCE - DELIVERY:*

*SIGNATURE:*

*NAME/TITLE:*  MR. AJAY SMIRKE; DIRECTOR

*DATE:*  20th MAY 2024